[No. 14239. *En Banc.* November 8, 1917.]

EARL HADFIELD *et al., Appellants,* v. ALFRED H. LUNDIN, *as Prosecuting Attorney for King County, Respondent.*[1]

MUNICIPAL CORPORATIONS — USE OF STREETS — MOTOR VEHICLES — REGULATION—BONDS—CONSTITUTIONAL LAW — DUE PROCESS — EQUAL PROTECTION OF LAWS. The jitney bus act, Rem. Code, § 5562-37 *et seq.*, requiring city motor carriers of passengers for hire to give a security bond executed by a qualified surety company, does not violate the constitutional prohibitions against depriving one of property without due process of law, or of the equal protection of the laws, notwithstanding the act is prohibitive from the fact that there are no qualified surety companies from which such bonds are obtainable; since the state in the exercise of its police power can prohibit the use of the streets as a place of private business.

SAME—USE OF STREETS—MOTOR VEHICLES—REGULATION—BONDS—STATUTES. Rem. Code, § 5562-38, requiring city motor carriers of passengers for hire to give a security bond executed by a surety company to do business in this state, running to the state of Washington, conditioned for the faithful compliance with the provisions of the act, is not satisfied by procuring a liability bond by a mutual union insurance company indemnifying the carrier against liability for damages, and assigning such bond to the state for the benefit of third persons who may be injured by the negligent driving of the vehicle.

Appeal from a judgment of the superior court for King county, Gilliam, J., entered May 25, 1917, dismissing an action for an injunction, upon sustaining a demurrer to the complaint.    Affirmed.

*William R. Crawford* and *Ralph S. Pierce,* for appellant.

*Alfred H. Lundin* and *Frank P. Helsell,* for respondent.

*James B. Howe, amicus curiae.*

[1]Reported in 168 Pac. 516.

ELLIS, C. J.—Plaintiff, in his own behalf and in behalf of others similarly situated, seeks in this action to enjoin defendant, as prosecuting attorney of King county, from prosecuting persons for operating motor propelled vehicles for hire upon the public streets of Seattle without having filed the bond and obtained the permit required by chapter 57, Laws of 1915, p. 227; Rem. Code, § 5562-37 *et seq.*

He alleged, in substance, that, since the passage of that act up to and including a time shortly preceding the commencement of this action, he had been engaged in the business of transporting for hire passengers along the public streets of Seattle in an automobile; that, during such time, he had on file with the secretary of state a bond executed by a qualified surety company in the sum and conditioned as required by that act; that the bond has expired and is now under its terms null and void; that he has been unable to secure a new bond from any surety company doing business in this state, and that no such surety company will write such a bond for him or for any other person engaged in a business similar to that of plaintiff, and this, regardless of the financial responsibility of the applicant; that the secretary of state threatens to, and will, cancel plaintiff's permit and will refuse to issue to him another permit, unless and until plaintiff procures and files a surety bond as required by the act. He further alleged that the Mutual 'Union Insurance Company, a domestic mutual insurance company, has been organized and is authorized to write liability or indemnity insurance against loss or damage resulting from accident or injury suffered by an employee or other person for which the insured is liable; that such company has issued to plaintiff its contract for such liability in the penal sum of $2,500 which is, by its terms, assignable to the state of Washington in behalf of any person who may be injured through the negligence or unlawful conduct of plaintiff in the conduct of his business of carrying passengers for hire; that this contract has been assigned to the state of Wash-

ington for the protection of any person so injured; that, notwithstanding the fact that a solvent fund has been so provided, defendant threatens strictly to enforce such law and compel plaintiff to secure a permit from the secretary of state and to furnish a bond signed by a surety company licensed to do business in this state; that such a course will force plaintiff out of a profitable and legitimate business, deprive him of his means of livelihood and inconvenience the public. Finally, it is alleged:

"That such law is null and void because so burdensome as to be unreasonable; because it is arbitrary, confiscatory, impossible of fulfillment and tantamount to a prohibition against the carrying on by the plaintiff of a legitimate business; that it contravenes the constitution of the state of Washington, section 3, article 1 thereof, and the constitution of the United States, article 14 thereof, in that it deprives the plaintiff of his liberty and property without due process of law and denies to the plaintiff the equal protection of all the provisions of the constitution of the state and of the United States applicable thereto."

Defendant moved to dismiss the complaint on the ground that it did not state facts sufficient to constitute a cause of action. The motion was sustained and the complaint was dismissed. Plaintiff appeals.

Appellant's contentions are (1) that chapter 57, Laws of 1915, p. 227 (Rem. Code, § 5562-37 *et seq.*), is unconstitutional; (2) that, in any event, he should be permitted to assign to the state and file the indemnity bond tendered in his complaint as a sufficient compliance with the statute.

I. It is urged that the statute is unconstitutional in that it deprives appellant of his liberty and property without due process of law, thus contravening section 3, article 1, of the state constitution, and in that it deprives him of the equal protection of the law in contravention of the Fourteenth Amendment of the Federal constitution. We have twice held this law constitutional. *State v. Seattle Taxicab & Transfer Co.*, 90 Wash. 416, 156 Pac. 837, *State v. Ferry*

*Line Auto Bus Co.*, 93 Wash. 614, 161 Pac. 467. But it is argued that, in neither of those cases, did it appear that bonds of the character prescribed by the law could not be procured, which fact does appear in the record now before us and which, it is asserted, demonstrates the unconstitutionality of the law. We shall confine our discussion to a consideration of that question.

The streets and highways belong to the public. They are built and maintained at public expense for the use of the general public in the ordinary and customary manner. The state, and the city as an arm of the state, has absolute control of the streets in the interest of the public. No private individual or corporation has a right to the use of the streets in the prosecution of the business of a common carrier for private gain without the consent of the state, nor except upon the terms and conditions prescribed by the state or municipality, as the case may be. The use of the streets as a place of business or as a main instrumentality of business is accorded as a mere privilege and not as a matter of natural right. In *State v. Seattle Taxicab & Transfer Co., supra,* we said:

"As to those who were denied bonds, the act may be prohibitive, but this does not argue against its constitutionality. It in no manner proves that the regulation is unreasonable. Highways are constructed primarily as a convenient passageway for all of the people, and no one has an absolute right to use them for his own private gain, even though such use be to carry over them people who desire the service."

In *Green v. San Antonio* (Tex. Civ. App.), 178 S. W. 6, it is said:

"So in this case, appellant has never had any vested right to use the streets of San Antonio to engage in the business of a common carrier of passengers for hire, and no right of his is infringed or invaded by the ordinance requiring certain things to be done in order to enter into business on the streets, which have, at the expenditure of large sums, been placed by the city in prime condition for automobile travel.

The streets belong to the public, the city being its trustee, and no private individual or corporation has a right to use such streets for the prosecution of a business without the consent of the ·trustee and a compliance with the conditions upon which the permission to use them is given."

In *Le Blanc v. New Orleans*, 138 La. 243, 70 South. 212, it is said:

"The streets of the cities and towns in Louisiana being among the things that are 'public' and 'for the common use,' no individual can have a property right in such use for the purposes of his private business, unless, speaking generally, that business being in the nature of a public service or convenience, such as would authorize the grant, the right has been granted by the state, which alone has the power to make or authorize it, or, by the particular city or town, acting under the authority of the state, and in such case the right can be exercised only in accordance with the conditions of the grant; that is to say, an individual seeking, but not possessing, a right of that kind, may accept the grant, with the conditions imposed by the offer, in which case he becomes bound by the conditions, or he may refuse to accept the conditions, in which case there is no grant, and without the grant so offered, or some other, from the authority competent to make it, he can never acquire the right to make use of a street as his place of business."

See, also, to the same effect, *Memphis Street R. Co. v. Rapid Transit Co.*, 133 Tenn. 99, 179 S. W. 635, Ann. Cas. 1917C 1045, L. R. A. 1916B 1143, P. U. R. 1916A 834; *Memphis v. State ex rel. Ryals*, 133 Tenn. 83, 179 S. W. 631, Ann. Cas. 1917C 1056, L. R. A. 1916B 1151, P. U. R. 1916A 825; *Ex parte Dickey*, 76 W. Va. 576, 85 S. E. 781, L. R. A. 1915F 840; *Ex parte Lee*, 28 Cal. 719, 153 Pac. 992; *Lutz v. New Orleans*, 235 Fed. 978. These cases, though involving regulatory statutes or ordinances, all recognize and are based upon the fundamental ground that the sovereign state has plenary control of the streets and highways, and, in the exercise of its police power, may absolutely prohibit the use of the streets as a place for the

prosecution of a private business for gain.  They all recognize the fundamental distinction between the ordinary right of a citizen to use the streets in the usual way and the use of the streets as a place of business or main instrumentality of a business for private gain.  The former is a common right, the latter an extraordinary use.  As to the former, the legislative power is confined to regulation; as to the latter, it is plenary and extends even to absolute prohibition.  Since the use of the streets by a common carrier in the prosecution of its business as such is not a right, but a mere license or privilege, it follows that the legislature may prohibit such use entirely without impinging any provision either of the state or Federal constitution.

In *Allen v. Bellingham*, 95 Wash. 12, 163 Pac. 18, we said:

"But the use to which the appellant purposes putting the streets is not their ordinary or customary use, but a special one.  He purposes using them for the transportation of passengers for hire, a use for which they are not primarily constructed.  As to such users, we think the power of the municipality is plenary, in so far as this particular clause of the statute is concerned.  It denies no form of regulation pertaining to business of this character, even to the prohibition of the business entirely."

That language may be said to be *obiter*, but it states the correct principle as amply sustained by authority.  In *Cummins v. Jones*, 79 Ore. 276, 155 Pac. 171, the supreme court of Oregon, after discussing and quoting at length from many authorities said:

"We conclude, therefore, that since the ordinance in question is purely prohibitory, and cities have the undoubted right to prohibit such use of their streets, the demurrer should have been sustained."

In *Wade v. Nunnelly*, 19 Tex. Civ. App. 256, 46 S. W. 668, the Texas Court of Civil Appeals said:

"The ordinance in question does not undertake to prevent or interfere with the right of the appellees to purchase, sell, or otherwise deal in the products referred to upon their own

premises; nor does it prohibit other persons from carrying such products and delivering them to appellees upon their premises. . . . But appellees have no vested right to make marts of the streets, alleys, and other public places; and to deny them the privilege of so doing is not to destroy or deteriorate any of their property rights."

In *Ex Parte Dickey, supra*, the supreme court of West Virginia used the following language:

"The right of a citizen to travel upon the highway and transport his property thereon, in the ordinary course of life and business, differs radically and obviously from that of one who makes the highway his place of business and uses it for private gain, in the running of a stage coach or omnibus. The former is the usual and ordinary right of a citizen, a common right, a right common to all, while the latter is special, unusual, and extraordinary. As to the former, the extent of legislative power is that of regulation; but as to the latter, its power is broader. The right may be wholly denied, or it may be permitted to some and denied to others, because of its extraordinary nature. This distinction, elementary and fundamental in character, is recognized by all the authorities."

See, also, *People v. Rosenheimer*, 209 N. Y. 115, 102 N. E. 530, Ann. Cas. 1915A 161, 46 L. R. A. (N. S.) 977; *Memphis v. State ex rel. Ryals, supra; Fifth Ave. Coach Co. v. New York*, 194 N. Y. 19, 86 N. E. 824, 21 L. R. A. (N. S.) 744. The regulation here involved, even considered as a prohibition, does not contravene the Fourteenth amendment of the Federal constitution.

"It is settled that the fourteenth amendment does not create any right in a citizen to use the public property in defiance of the laws of the state." *Lutz v. New Orleans, supra.*

See, also, *Davis v. Massachusetts*, 167 U. S. 43.

If any proposition may be said to be established by authority, the right of the state, in the exercise of its police power, to prohibit the use of the streets as a place of private business or as the chief instrumentality in conducting such business, must be held so established. Nor can it be questioned

that the power to prohibit includes the power to regulate, even to the extent that the regulation under given conditions may be tantamount to a prohibition. Where the power to prohibit exists the reasonableness of any regulation is palpably a legislative question, pure and simple. To hold otherwise, would be to assert an absurdity. When the legislature acts within its constitutional authority in the exercise of the police power, the expediency of its action is not a question for the courts. In such a case, the power once being established, the legislature determines by the enactment itself that the law is reasonable and necessary. *State v. Mayo*, 106 Me. 62, 75 Atl. 295, 26 L. R. A. (N. S.) 502.

The complaint before us shows that the statute in question not only could be complied with, but for over a year was complied with by the appellant himself. If, as asserted, appellant is now unable to meet those requirements because the character of bond required by the act cannot be secured, then he is not entitled to the privilege which the statute grants; and this, simply because the grant was conditioned upon the meeting of those requirements. *Le Blanc v. New Orleans, supra.*

II.   Appellant urges that he should be accorded the right to procure a liability bond indemnifying himself against liability for damages, written by the Mutual Union Insurance Company, and should be permitted to assign it to the state for the benefit of third persons who may be injured by the negligent operation of his vehicle and file it in lieu of "a bond running to the state of Washington in the penal sum of twenty-five hundred dollars, with good and sufficient surety company licensed to do business in this state as surety to be approved by the secretary of state, conditioned for the faithful compliance by the principal of said bond with the provisions of this act" as required by Rem. Code, § 5562-38. We have held that the Mutual Union Insurance Company cannot write the bond required by the statute. *State ex rel. Mutual Union Ins. Co. v. Fishback*, 97 Wash. 565, 166 Pac. 799. Ap-

pellant does not claim that an arrangement such as tendered in his complaint would be a compliance with the law but argues, in substance, that it is something just as good. But the courts cannot legislate. The law-making body, acting within its undoubted powers, has prescribed in plain terms the conditions upon which appellants and others in like case may use the streets in the prosecution of their business. The courts have no power to alter such conditions. The statute is too plain for construction. We are asked not to construe the statute but to amend it under the guise of construction. We must decline that office.

HOLCOMB, MAIN, MORRIS, CHADWICK, PARKER, MOUNT, and FULLERTON, JJ., concur.

WEBSTER, J., took no part.